2354 23-5084 U.S. v. Day 2355 Mr. Day raises only one argument in his appeal, which is that the District Court erred in applying a sentence enhancement of two levels for maintaining a premises for purposes of distributing controlled substances. Now, in our brief, we present at least four factors that the District Court should have considered, beginning with the two that are in the statute themselves. Perhaps most importantly, as the court considers this case, would be the Morgan case, which was cited in our opening brief, the Morgan case's description of what Congress did and did not do with regard to the similar statute in maintaining versus mere possession. The court there described that the Congress could have chosen to outlaw merely possessing a property for the purposes of distributing or manufacturing controlled substances, but it didn't. It used the word maintain instead, and so did the Sentencing Commission, and the word maintain connotes something much more than mere possession, whether that's legal possession or constructive possession. It connotes a certain degree of continuity and duration of possession, and all of those factors were completely disregarded by the District Court in this case. Are we supposed to review the judge's decision, taking the most favorable view of the evidence to support the judge's decision, and we don't necessarily require the judge to go through all that evidence in reaching his conclusion or her conclusion? Your Honor, the standard review here is de novo, but of course we are not challenging any factual findings made by the trial court. We are pointing out, however, that the trial court failed to make factual findings that are sufficient to support the application of this enhancement. So you're saying it's de novo review, but insofar as the law depends on the facts, which is often the case, we cannot consider any fact that the judge failed to find, as opposed to reviewing the record in the light most favorable to the District Court's decision? Well, the court does have to defer to factual findings, but there are some areas where no findings were made and where there would have been conflicting evidence, as we've noted in our footnote. And that's why I asked about the standard review at the outset. When that happens, don't we review the record, the factual record, in the light most favorable to the determination by the district judge? We assume that the judge made all the findings that, even though not expressed, that the judge made all the findings that support, necessary to support the ruling. Isn't that, am I wrong about the standard of review? I don't think that that is the standard of review, Your Honor, because when there appear to be factual issues that were not, but needed to be resolved by the trial court in the past, then this court has remanded for the trial court to resolve those factual issues. At the very last page of our brief, in the conclusion, we've cited, I believe it's the Williams case that stands for that proposition. Well, could you address the Verner case? That to me seems to be the most difficult case for you in that, in that case, we found that the defendant did maintain a premise, which primary use was for these drug activities, and it was his mother's home, and he had a bedroom, his childhood bedroom, in his mother's home, that he didn't live in, but he used for his activities, and we said that was maintaining a premise. So why wouldn't renting an Airbnb and using it for your, for your, for both to possess and sell, fentanyl in this case, why isn't that even stronger evidence of maintaining a premise than the Verner case? Yes, for several reasons, Your Honor. Number one, that Verner's case deals with the so-called crack house statute, and that statute does not expressly require a district court to consider the legal possessory interest of the defendant as the guidelines do. Well, the note, the note to the guidelines? Yes, the application note 17. The application note, yeah. Yes, Your Honor. I'm sorry about that. It requires consideration of whether the defendant has a possessory interest, and it also requires consideration of whether the defendant is able to control access to and activities at the property. As we've discussed— That is, but that is some of the same factors they look at, isn't it, for, under the statute? It is similar. I believe that under the statute, there should be, and there often is, consideration of legal possessory interest or constructive possessory interest. And I would submit under Verner's that the court decided that there was some constructive possessory interest here. In the Verner's case, this young man was using his former childhood bedroom, it appears, to store his things. He still listed the house as his address for many purposes. He still had a key to the home, and the mother let him use the room how he liked and come and go. He had a substantial connection, which was the test that was employed in Verner's, whether the defendant has a substantial connection to the premises and is more than a mere casual visitor. But here, Mr. Day was, at most, the most the evidence can show is that he was at his Airbnb, I say his, but it was actually rented by another person at his direction, and he was there for at most five days. His time there was not continuous. The district court found itself that he went back and forth between Oklahoma and Arizona, and it's unclear whether he left during that five-day period. And he had no other connection, as Verner's did, to Verner's room. He didn't have another connection, aside from staying there temporarily, just like a hotel room. And so I think that Verner's is distinguishable on its facts. So you can't use a hotel room as a place of dealing drugs, is that what you're saying? At least, if you do, you're not guilty of maintaining the premises? Yes, Your Honor. I think... Do you have authority for that? I haven't found a case in this circuit that has addressed a hotel room, but... What about other circuits? I haven't found one in another circuit. I don't believe that we've cited one. But analyzing the factors that are at issue here, a person in a hotel room cannot exclude others from the hotel room. There are rights... There are some people who have rights to it. Yes. That's true of a lot of places. If you rent an apartment, even if you live there forever, the landlord has some rights of access. Yes, Your Honor. They're more limited, I believe, than a hotel room or an Airbnb, as we've discussed in our brief. But the exclusive possession is not required to maintain a premises. No. It is not determinative, nor necessarily required. The court must analyze all of these factors together. In Mr. Day's case, he doesn't have a legal possessory interest. He does not have the ability... So if he just used an abandoned premise, an abandoned house, to deal drugs, then he couldn't be guilty of maintaining the premise because he has no legal right to be there? That is a factor weighing in favor of a determination that he did not maintain the premises. The court would also look at constructive possession and continuity and duration, and what else he did with the property, such as fixing it up, making it a place that he could live better. Those kinds of considerations. Where would you draw the line? Are you saying, if you're going to maintain a premises, it's got to be for two weeks, and only one other person can have access to it? Where do you draw the line? The word maintain suggests some continuity, not a one-off, not a casual visitor. I think that's the term that's often used in these cases. Where would you draw the line? It's interesting that the court uses the word casual visitor, but that's not the test. The court says that the defendant must have a substantial connection to the premises and be more than just a casual visitor. And here, our argument is that a mere five days that may not have been continuous at an Airbnb that was rented by someone else, the court just did not find enough facts. It was rented in his direction. That's not disputed. Yes, Your Honor. It's not disputed. That was stipulated at the trial. What is your understanding of the Sentencing Commission's policy in adopting subparagraph B-12? What was it after? What was the danger that led to a two-level increase that it was trying to prevent? I think from my research it's similar to the reason behind the so-called crack house statute that maintaining a place of regular manufacture or drug distribution has negative effects on the community. It creates the opportunity for additional crime because it's one place where all of these folks are coming to manufacture or exchange the controlled substances. And why isn't that the case any time a defendant seizes upon, rents, owns property, and opens it for business in that sense? Isn't the same danger lurking in all of those situations? There's going to be a shooting. Someone's going to try to rob the person of their drugs or the drug proceeds. Children out in the street are more endangered by speeding cars or something like that. Yes, Your Honor. I think that that danger increases as time goes by, and that's why continuity and duration are so important. But the guideline does not say two levels if it's one month worth of occupancy and four levels if it's a year of occupancy. It just says if you're doing this, you get two levels. I don't know why it would have to be more than one day. If he sold drugs on the first day, I don't know why that isn't good enough for this enhancement. If that were true, Your Honor, it would be difficult to conceive of a way that a defendant could possess a property without maintaining it. If it's just one day at a hotel, for example. Here's one way. Don't sell drugs there. Your Honor, that would be the second prong of the sentence enhancement, which is both that the defendant has to maintain a premises and that it be for the purpose of distributing controlled substances. They go hand in hand, don't they? They do, Your Honor. But the court must find maintain in addition to just for the purposes. You're not saying maintain like make sure the shingles don't leak water into the living room. Your Honor, that is an aspect, I believe, of the regular definition of maintain. All right. Yeah. If they don't mow their lawn, I'm not sure they don't get minus two off. But maintaining is more a matter of arranging for this. Hey, I'm on the phone. I can sell you however much fentanyl if you get over here in ten minutes and bring cash. And please, no firearms. Don't rob me. It seems good enough. You're maintaining the premises for that purpose. He didn't rent the Airbnb to go lounge on the beach. All right. That's correct, Your Honor. I believe it's undisputed here that the purpose of renting the Airbnb was to give him a place to stay while he was in Tulsa, and he was specifically in Tulsa for the purpose of distributing controlled substances. From there. Why is that not game over? Because, Your Honor, there is a difference between mere possession and maintenance, and that's what we're discussing here. Okay. Thank you. If there are no further questions at this time, I'd like to reserve the remaining time for rebuttal. Thank you, Your Honor. Thank you, Counsel. Ms. Lowe? Good morning, Your Honors. Lina Lam for the United States. I'd like to begin by apologizing for an error I noted in my brief on preparation at the top of page nine. I think we overstate the holding of the panel in Cortez Diaz. We say that ownership is not a factor in determining whether a defendant maintained the property or had a possessory interest. That's incorrect. What the panel said in Cortez Diaz was that ownership was not dispositive of the possessory interest factor. And here, I think that leads us to the discussion that Judge Hartz brought up. What possessory interest is sufficient? Comment 17 says possessory interest, e.g. renting or owning. I have looked through all the case law. I have not found a published decision that addresses hotel rooms. However, in at least six cases from 2017 through 2023, the Fourth, Fifth, Sixth, Eighth, Ninth, and Eleventh circuits have all held that the maintaining enhancement is appropriately applied when the defendant… Are those cases in your brief? They are not. They are not published authority, but I can submit a 28-J that would list those. Or I can list them for you today. 28-J is good. Thank you. In almost every one of those cases, the panels of those courts held that use of a hotel room or a series of hotel rooms for the purposes of storing or distributing drugs were sufficient to support the maintaining enhancement. What's your understanding of the Senate's and Commission's policy in adopting that particular amendment? It is in part what Mr. Boland said and what you all discussed, the need to protect the neighborhoods and the properties and the neighbors from the effects of drug distribution. But another part of that is that the use of these places, the use of a stash house or a hotel room has the effect of enabling greater levels of drug distribution. Someone dealing drugs on the street can't store kilos in their pockets. If they have a place where they can store 8,000 pills of fentanyl, for example, $15,000, 190-plus rounds of ammunition, five chamber-loaded firearms, a digital scale, that goes to the purpose behind the sentencing enhancement and behind 21 U.S.C. 856-A1. Because the use of a premises, whether a hotel room, an Airbnb, an apartment, a house— How about a tent? What wouldn't be included? And that's my question. I mean, it's so broad. If hotel rooms are included, you're not really talking about a neighborhood of homes. Apartments are, I'm sure, included. Airbnbs are included. What about a room within an Airbnb? What about a tent in the backyard? The borderlines of this analysis that we've talked about are a tent, a motorhome, a car. Would a car be a premises? We don't know. You could live in your car. And you would have control of your car and store drugs and your clothes in your car. Why wouldn't it be? It's possible that it would be. What more than—I'm sorry, go ahead. Well, I guess I'm just kind of wondering what's the point of the enhancement. It basically could apply in any case. As long as the primary purpose of the— As counsel will correctly identify, there are two prongs. And Verner's is a good example of where those prongs can diverge. In Verner's, Mr. Verner's mother was also charged with maintaining. And the court looked at it and said she definitely maintained this home. She had a possessor interest. It was her home, even though she didn't pay rent. But she didn't maintain it for the purpose. Mr. Verner's, it was a much—it wasn't—there was no question that he was using it for purposes of distribution. But the question was whether he maintained it. And so— And was it the room or the home that he maintained in that case? In Verner's— Because he clearly didn't maintain the home. He didn't live there. He had a room. He didn't even live in his room. I mean, what do you think it was there? And in Verner's, it was almost certainly the room. And here— So he maintained his childhood room in his mother's bigger home. Yes. He didn't live there, but he kept some things there and did some business there. And here— And that was maintaining the room. Yes, for purposes of drug distribution. And here, we debated a little bit whether Mr. Day maintained the entire Airbnb or the room where he kept the red duffel with the firearms, kept most of the pills, and which he locked to protect himself. And so the district court's findings could be supported either for the entire Airbnb or merely for the primary bedroom, which Mr. Verner's was using for these purposes. I think this goes back to Judge Hartz's question about what the standard of review here is. Mr. Day would like it to be de novo, but looking only at the district court's findings. I think a proper de novo review here looks at the entire record. And whether the facts in those records show that Mr. Day maintained the house. Show or could show? Is it necessary to persuade us or just that it's enough that the judge could have been persuaded? It's enough to convince you that the district court didn't err in applying it based on those facts. In maintenance, we've been discussing whether, okay, he just lives in a place and he deals drugs. To maintain a place for the purpose, he's got to use the premises, use it in some way to facilitate the drug transfer, such as keeping a larger stash or keeping weapons there, something like that. You agree to that? I do. I will note that Mr. Day is not challenging the purposes of. He is challenging only the maintaining prong. And here the facts strongly establish that Mr. Day maintained at least the bedroom and likely the entire Airbnb for the purposes of. It's that letter, for the purpose of, that distinguishes someone just living someplace and being a dealer from someone maintaining a premises. And that was the primary issue in this case, this court's decision in Murphy, where Murphy effectively conceded that he maintained his home but challenged the for purposes of. Interestingly, to the extent that counsel attempts to distinguish Verners, Murphy in footnote nine notes that although Verners involves the maintaining statute 21 U.S.C. 856 A1, the published decision in Murphy found Verners instructive as to the 2D 1.1 B12 enhancement because this court has used similar analysis in both those cases. So I think Verners is the proper case for this court to consider in assessing whether Mr. Day maintained the property here. In particular, Verners identifies a number of factors from the 11th Circuit's decision in Clavis that inform this court's analysis of whether Mr. Day maintained this property. Those factors include his control over the space and the testimony established that Mr. Day was the sole person living at the house that he came and went through the back door. The other factors include the duration and continuity of his use of or maintenance of the property. Although Mr. Day would suggest that the district court didn't find anything more than his possession for five days, a full review of the record reveals that in Mallory Massey's testimony, she testified that she had rented out that Airbnb for almost a month and that she unlocked the property for purposes of that lease on August 23rd, that she encountered Mr. Day at the property on September 9th. The other testimony by the Tulsa police officer Nicholas Wheeler, who conducted the controlled buy, established that the controlled buy was conducted on September 15th, and the defendant's half-brother, Charles Briggs, testified that he did another control, another drug sale of 2,000 fentanyl pills at the property on September 19th. Can I interrupt you? That reminds me of a question I had about the manager or the person who came over. She said, I don't know if this was in an affidavit or how if she testified what, but she said that she knew that nobody was or she thought nobody was using the premises because she gets an alert or notification every time someone punches in the code on the Airbnb door lock, and nobody had been going in and out of the front door. And that's why she went right over there, and she used her key or her access code, and she walked right in, and she didn't see anybody, and she walks back to the bedroom. The door is closed. She knocks. The defendant is there. He's in the bedroom, and he says, oh, I've been coming in the back door. But doesn't all of that, the fact that she's getting notice of who's coming and going, I'm sure there's cameras at these places, you know, and she can come over and she can walk in and she can check, doesn't all of that go to the question of whether he has control over the premises? It does. To clarify the record a little bit, there was some testimony that established that there were transmission problems, that she did not receive notification, for instance, on the day that Charles Briggs testified that the front door was opened to allow. That's not relevant. My point is she had some control and access, and that limited his control. And that's true. She could tell who was coming and going, or if somebody was coming and going, she could walk in apparently at any time. How does that give him control? Control of the premises? The enhancement doesn't require exclusive control. And certainly in circumstances like, for instance, hotel rooms, exclusive control, they're not different than this situation. But also, the degree of control he manifested was showed by the fact that he kept his own personal belongings, including expensive belongings, like the PS5 and his expensive sneakers, that he cared enough about to seek out Ms. Massey later to direct his girlfriend to go get those things. Those all went to the degree of control Mr. Day believed he had over the property. Let me ask a question. I thought he locked the door to the bedroom. Is that right? That is correct. And could the landlord unlock that door? She was not able to. She had to wait for him to unlock it. So if the premises he maintained where he kept the drugs and the guns was the bedroom, then it looks like he had exclusive control of those premises. Am I wrong about that? The record would support that conclusion, yes, Your Honor. And really, the access that Ms. Massey had in this case was no different from the access a typical landlord would have even for a long-term rental. The landlord generally always has some level of access, whether they choose to exercise it or not. The key here is that legal possessory interest is not what is required. It would be helpful, but it is not required to show that a defendant possessed the property or had a possessory interest in the property and exercise control over that property in order to qualify for this enhancement. And for all those reasons, we would ask this court to affirm the two-level enhancement. I would note that Mr. Day is correct, though, that the sentence on count three, the concurrent sentence on count three of 188 months exceeds the statute maximum of 180 months. But as Mr. Day concedes in his footnote, because the 188-month sentence is also supported by the drug conviction in count one, assuming this court were to affirm the 188 months with the maintaining enhancement, there is no need to remand to correct the harmless error of the concurrent gun sentence. Thank you. Thank you.  Mr. Boland? I'd like to address the issue of the locked door. We don't know whether the owner of the Airbnb could have unlocked that door and gotten in there because she didn't say. She said it was locked. She knocked, and someone answered. But she thought there was no one there. Exactly. She thought there was no one there, comes up to the locked door and doesn't try to unlock it. She knocks. If she didn't think anyone was there, wouldn't the natural thing be to unlock it herself? I'm only speculating here, but I believe if it were me, I would believe no one's in the house, enter the front door and find the locked door and assume maybe someone still is there. So she knocks and she sees someone. That point goes to also the point of her seeing Mr. Day on September 9th. That fact was not established because she testified at trial that she didn't recognize him and that he looked the same as Mr. Briggs, the half-brother. And the trial court, the district court, did not resolve that conflict in her testimony one way or the other. She wasn't able to monitor the opening and closing of the bedroom door. It was the front door that she had. She had the front door monitored but not the back door and not the bedroom door. Am I correct about that? Correct, Your Honor. Thank you.  Thank you. Thank you, Counsel.